IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RODNEY BENNETT,                             §
                                            §
                              Plaintiff,     §
                                            §   Civil Action No. 3:11-CV-0393-D
VS.                                         §
                                            §
DALLAS INDEPENDENT SCHOOL                   §
DISTRICT,                                   §
                                            §
                              Defendant.     §

MEMORANDUM OPINION
AND ORDER

This employment discrimination action brought by a veteran returning from service

in Afghanistan and Iraq requires that the court decide whether a reasonable jury could find

in his favor on claims brought under the Americans with Disabilities Act of 1990 ("ADA"),

42 U.S.C. § 12101 *et seq.*, and the Uniformed Services Employment and Reemployment

Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*  Concluding that a reasonable

jury could not find in his favor, the court grants defendant's motion for summary judgment

and dismisses this lawsuit.

I

Plaintiff Rodney Bennett ("Bennett") was employed by defendant Dallas Independent

School District ("DISD") as a police officer from February 2, 2001 until August 31, 2010.[1]

_____

[1]In recounting the factual background, the court summarizes the evidence in the light
most favorable to Bennett as the summary judgment nonmovant and draws all reasonable
inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869,
870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins.*

As an armed police officer, Bennett was responsible for patrolling school grounds, preventing the commission of crimes, apprehending criminals, and responding to emergency situations within an environment made up predominantly of children.

Between March 2005 and June 2006, and again between May 2007 and March 2009, Bennett was called to active duty as a member of the United States Army in Afghanistan and Iraq, respectively.[2]   During his deployment to Iraq, Bennett was seriously injured when a rocket-propelled grenade ("RPG") hit his vehicle.   Consequently, he was assigned to Fort Benning, Georgia on a "medical holdover" until January 2009.[3]   Bennett reported his injury

_____

*Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Nothing in this memorandum opinion and order should be interpreted as detracting from the respect due Bennett as someone who has served his country in active military service and in combat.

[3]Bennett moves to strike parts of DISD's summary judgment evidence, including references to his medical records from Fort Benning and the Veterans Affairs Medical Center in Dallas.  He argues that

> [i]t is inappropriate for Defendant to rely upon such medical records to defeat Plaintiff's claims, and even right to make claims, and to argue based on such medical records that Plaintiff was not subject to accommodation, under the Americans with Disabilities Act, when it could and should have obtained such records while Plaintiff was still employed with it in order to assess whether he was subject to accommodation.

P. Mot. Strike 1-2.  The court is aware of no legal basis to hold that DISD's failure to obtain these medical records during the time Bennett was employed by DISD should prevent it from relying on the records to support its summary judgment motion.

Regarding the other evidence that Bennett moves to strike and that the court has considered below, the court concludes that his objections to evidence as irrelevant or conclusory are insufficient to warrant striking the evidence.  Therefore, the motion to strike is denied in this respect as well.

to DISD and also informed DISD of the cause of his injury and that he had undergone subsequent medical treatment at a military base hospital in Georgia.  It is undisputed that Bennett was suffering from two disabilities when he returned from the military: a knee injury and post-traumatic stress disorder ("PTSD").  DISD does not concede for purposes of the ADA, however, that Bennett was disabled or regarded as disabled.[4]

In May 2009, when Bennett was returning from military leave, DISD requested that he complete an Essential Functions Form ("EFF").  DISD also informed Bennett that, in order to return to his duties as a police officer, it would be necessary for him to submit to, and successfully complete, a psychological fitness for duty exam.  DISD maintains that, due to his self-disclosed physical injuries, the EFF was necessary so that the DISD Police Department could determine which position Bennett was qualified to fill.  According to Bennett's May 15, 2009 EFF, he could not perform the following "essential job functions of police officers" for six months: walking and running for long periods of time; jumping from elevated surfaces; navigating obstacles such as ditches, streams, or fences; balancing on uneven or narrow surfaces; using force to gain entry through barriers; maintaining a full range of motion of the neck and head; or bending over, reaching, crouching, climbing stairs, and lifting and dragging one's own body weight in the course of performing job-related duties.  D. App. 258.

---

[4]DISD maintains that Bennett was not disabled or regarded as disabled under the ADA because he did not inform anyone that he was suffering from PTSD, and the knee injury was an impairment expected to last fewer than six months.

In June 2009, when Bennett returned to work at DISD, he was offered a light-duty position in the DISD Police Department as an unarmed security officer due to his physical limitations, as stated on the May 15, 2009 EFF.  In this position, Bennett was still considered a police officer in the DISD Police Department, and his pay and benefits remained the same as they had been before Bennett was deployed in May 2007.  DISD refused to issue Bennett a uniform because he was not functioning as a police officer due to his physical restrictions.

An EFF completed in January 2010 indicated the same limitations as Bennett's May 15, 2009 EFF, but did not indicate an estimated date of recovery.  On April 6, 2010 Bennett's physician completed another examination and reported that his restrictions on running and bending were extended for at least 12 more months.  Based on his physician's reports, DISD's ADA Committee determined in April 2010 that it would accommodate Bennett by assigning him to a police dispatcher position.  In a meeting held later that month with DISD Assistant Chief of Police Isaac "Bill" Avera ("Avera"), DISD's Police Department Director of Operations Rene Ronquillo ("Ronquillo"), and Lieutenant Calvin Howard ("Howard"), Bennett was informed that he was being reassigned to a dispatcher position, but that his salary, status, and benefits would remain the same.  Bennett was also advised that, before he could return to his duties as a police officer, it would be necessary to submit to, and successfully complete, a psychological fitness for duty examination.  Finally, Bennett was told that, when he moved to the dispatcher position, DISD would not be able to continue carrying his police commission, which allows him to carry a gun at all times, on or off duty.

On May 10, 2010 Bennett submitted a new physical examination report from a

physician indicating that, as of April 28, 2010, the temporary restrictions on walking, running, and bending were terminated, and clearing him for all essential physical duties of a police patrol officer.  Rather than assign Bennett to the position of patrol officer, however, DISD continued to request that he submit to a psychological fitness for duty evaluation. Bennett refused to submit to do so and did not report to work after June 23, 2010.

Bennett filed a grievance with the DISD Human Resources Department on May 10, 2010, asserting that he had been a victim of discrimination and a hostile work environment. In June 2010 Bennett filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the ADA.  DISD terminated Bennett's employment on August 31, 2010 for job abandonment and for insubordination based on his failure to undergo the required psychological evaluation.

After receiving a right to sue letter from the EEOC, Bennett filed suit against DISD asserting claims for violations of the ADA and USERRA.  DISD moves for summary judgment, seeking dismissal of all claims.  Bennett opposes the motion.[5]

---

[5]The court notes, for the future reference of both sides, that the motion and response filed in this case are too long.  In addition to their briefs (which, under N.D. Tex. Civ. R. 56.5(b), can be up to 50 pages long), DISD has filed a 24 page motion and Bennett has filed a 30 page response.  The court has explained in prior opinions and orders why lengthy motions and responses are not permitted under the court's local summary judgment rules. Both sides must avoid such filings in the future and should seek clarification from the court if they do not understand how the rules operate.

II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the opposing party must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citation omitted). Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on an issue for which DISD bears the burden of proof at trial, it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that DISD must demonstrate that there are no genuine and material fact disputes, and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the

'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court turns first to Bennett's ADA discrimination claim.

A

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on this claim, Bennett must present direct or circumstantial evidence that his disability was a motivating factor for DISD's adverse employment actions. *See, e.g., Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

When a plaintiff does not present direct evidence of discrimination, the court applies the modified *McDonnell Douglas* approach. *Seaman*, 179 F.3d at 300 (holding that *McDonnell Douglas* framework, which is used in Title VII cases, applies to ADA cases when

- 7 -

only circumstantial evidence of discrimination is offered). As modified, the *McDonnell Douglas* framework consists of three stages. First, Bennett must establish a prima facie case of discrimination, which "creates a presumption that [DISD] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination based on a disability under the ADA, Bennett must show that (1) he suffers from a disability or is regarded as disabled; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to his disability; and (4) he was replaced by a non-disabled person or treated less favorably than nondisabled employees. *See, e.g., Milton v. Texas Dep't of Crim. Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

Second, if Bennett establishes a prima facie case, the burden shifts to DISD to articulate a legitimate, nondiscriminatory reason for the employment actions taken against him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). DISD's burden is one of production, not proof, and involves no credibility assessments. *See, e.g.*, *West*, 330 F.3d at 385.

Third, if DISD meets its production burden, Bennett must show that the legitimate reasons proffered by DISD "were not its true reasons, but were a pretext for discrimination."[6]

---

[6]It is unclear whether the mixed-motive alternative to rebutting a defendant-employer's proffered legitimate reasons is still viable in ADA discrimination claims. In 2008, the Fifth Circuit held that the mixed-motive alternative, or "motivating factor" test, applied in ADA discrimination claims. *See Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). Therefore, to survive summary judgment, Bennett must "offer sufficient evidence to create a genuine issue of material fact . . . that [DISD's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted) (describing standard in context of age discrimination case).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

_____

Cir. 2008) (holding that under ADA "discrimination need not be the sole reason for the adverse employment decision, but must actually play a role in the employer's decision making process and have a determinative influence on the outcome" (citation, internal quotation marks, and alterations omitted)). But subsequent to *Pinkerton*, the Supreme Court ruled that the mixed-motives alternative is unavailable in the similarly-worded discrimination provision of the Age Discrimination in Employment Act ("ADEA"). *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). *Gross* held that the mixed-motives argument was unavailable because, among other reasons, the ADEA's relevant provision prohibits discrimination "because of" age instead of employing Title VII's broader prohibition of discrimination that is a "motivating factor" for an employment practice. *See id.* at 174-76. The Fifth Circuit has since held, however, that in Title VII retaliation cases a mixed-motives claim is available despite the text's use of "because of" rather than "motivating factor." *See Smith v. Xerox Corp.*, 602 F.3d 320, 329-30 (5th Cir. 2010). Although the Fifth Circuit's decision appears limited to the Title VII context and does not address the ADA, the issue remains unclear. The Supreme Court has granted certiorari in a case that apparently will address whether the mixed-motive argument is available in the context of a Title VII retaliation claim. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 978 (2013). This court need not decide whether a mixed-motive argument is available under the ADA because, assuming *arguendo* that it is, DISD is still entitled to summary judgment. *See infra* note 11.

*Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

The court will assume *arguendo* that Bennett has established a prima facie case of discrimination under the ADA and will consider whether DISD has articulated a legitimate, nondiscriminatory reason for the adverse employment actions taken against him. According to Bennett, the adverse employment actions taken against him were placement in the security officer position in June 2009, reassignment to the dispatcher position in April 2010, and termination of his employment in August 2010.

Regarding the decisions to place Bennett in the positions of security guard and dispatcher, DISD has introduced evidence that Bennett's physical limitations would have prevented him on his return to the district from performing the essential functions of the position of police officer, and that it reassigned him to both positions based on his physical impairments.[7] According to DISD's evidence, the assignment to the dispatcher job was determined by the ADA Committee, which considered Bennett's restrictions and decided that he could be accommodated in this position.

As for Bennett's termination, DISD has produced evidence that he refused to report for work, which constitutes job abandonment, and that he failed to comply with the requirement that he undergo a psychological evaluation, which constitutes insubordination.

―――――――――――――――

[7]Although on May 10, 2010 Bennett submitted a physical examination releasing him of all physical restrictions, this occurred after DISD reassigned him to the dispatcher position.

DISD maintains that job abandonment and insubordination constitute legitimate, nondiscriminatory reasons for terminating someone's employment.  It argues that a psychological evaluation was necessary under its policy of requiring all police officers to submit to a psychological examination after being involved in a traumatic event, whether on or off campus, in which the officer's life has been threatened.  Because Bennett disclosed to DISD that he had been involved in a RPG attack while deployed to Iraq, DISD determined that a psychological evaluation was necessary.

The court holds that DISD has met its burden of producing evidence of legitimate, nondiscriminatory reasons for the adverse employment actions on which Bennett relies.

## C

The court now considers whether Bennett has introduced evidence that would enable a reasonable jury to find that each of the reasons on which DISD relies is pretextual.

### 1

Under the *McDonnell Douglas* burden-shifting framework, once the employer has produced evidence of a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff must introduce evidence that would enable a reasonable jury to find that the defendant's proffered legitimate reason is not its true reason for the adverse employment action but is instead pretextual.  *Reeves*, 530 U.S. at 143.  A plaintiff can prove pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).  Although generally "a plaintiff's

prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," there are "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." *Id.* at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524). "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (alterations in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). The plaintiff might create "only a weak issue of fact as to whether the employer's reason was untrue and there [may be] abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 148. Thus it is "'possible for a plaintiff's evidence to permit a tenuous inference of pretext and yet be insufficient to support a reasonable inference of discrimination.'" *West*, 330 F.3d at 385 (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 903 (5th Cir. 2000 )); *see also Rosenblatt v. 7-Eleven, Inc.*, 2007 WL 2187252, at *12 (N.D. Tex. July 27, 2007) (Fitzwater, J.) (granting summary judgment where, assuming fact issue on question of pretext existed, fact issue was "weak," and there was no evidence that employee's age was ever considered in employer's decision to terminate his employment).

2

Bennett maintains that pretext is shown through DISD employees' biased statements against him that implied that he would never return to a police officer position; their resentment for his seeking to return to a police officer position; and disparate treatment compared to other police officers and security officers.

To establish bias, Bennett relies on statements made about the psychological evaluation that DISD mandated that he undergo. During the April 2010 meeting, Bennett asked why he was being required to take a psychological examination and physical agility test, to which Avera responded, "[Y]ou've been gone a long time to both Iraq and Afghanistan and I'm not going to take any chances." P. App. 13 (Avera deposition).[8] Bennett avers that Howard told him that "he guaranteed . . . I wouldn't pass [the psychological evaluation]," which Bennett understood as a threat that Howard would take action to ensure that Bennett would fail. *Id.* at 87.[9] Bennett also points to an August 2009 set of questions that DISD provided him, which he maintains "not only assumed his physical disability, but questioned his mental disability." P. Br. 4. He states that he was told he could not return to a police officer position until the questions were answered. As evidence of

_____

[8]Bennett asserts in his brief that Ronquillo did not deny in his deposition testimony saying that "sometimes a veteran returning to work comes back and things are different." P. Br. 4 (quoting P. App. 224-25). Ronquillo actually testified that he did not recall having made such a statement. *See* P. App. 224-25.

[9]Howard testified in his deposition that he did not tell Bennett that, with Bennett's combat experience, he would be unable to pass the psychological examination. At the summary judgment stage, the court assumes that he did.

resentment against him for seeking to return to a police officer position, Bennett relies on allegedly discouraging statements about his employment prospects if he did not accept the dispatcher position. Bennett avers that he received an ultimatum that he must take the dispatcher job or nothing, and that Howard told him the "unemployment lines are getting longer every day." P. App. 148. Bennett also cites an email from Howard to Ronquillo stating that Bennett "tried to slam us" with his USERRA grievance, *id*. at 150, and an email in which Bennett stated he felt he was being treated differently by Howard and Ronquillo "based on his circumstances of his returning from military service," *id*. at 179. The evidence on which Bennett relies—even if viewed as threats that Bennett would not be able to pass a psychological evaluation or ever become a police officer again—would not permit a reasonable jury to find that DISD's reason for assigning him to the positions of security officer and dispatcher—his inability to perform the essential physical functions of a police officer position—is pretextual. Nor would the evidence permit a reasonable jury to find that DISD's reasons for terminating his employment—job abandonment and insubordination—are pretextual. Bennett contends that he suffered disparate treatment that establishes that DISD's reasons were pretextual. As evidence, Bennett contends that other police officers returning from medical leave were not demoted to being security officers or dispatchers. He argues that Howard was not required to perform a physical agility test or psychological evaluation upon return from medical leave; that police officer Charles Harris was allowed to come back from medical leave as an investigator within the police department; that police officer Vanessa Holland was on medical leave and came back as a

police officer; and that an individual named Cortez was not permanently assigned to be a security officer while under medical restrictions. This evidence that other police officers were permitted to return to their police officer positions after being on medical leave would not permit a reasonable jury to find that, as to Bennett, physical limitations were not the real reason he was not permitted to return to a police officer position. DISD has adduced evidence of the essential physical requirements of a police officer, and Bennett does not dispute that, before he submitted his release on May 10, 2010, he was restricted from performing some of these physical requirements. The fact that other officers were permitted to return to their police officer positions after taking medical leave does not raise a genuine fact issue as to whether DISD actually believed *Bennett* was physically able to serve as a police officer. Moreover, Bennett has not adduced evidence about the nature of the other officers' medical conditions that would enable a reasonable jury to find that DISD had allowed officers with comparable physical restrictions to return to police officer positions.

As further evidence of disparate treatment, Bennett asserts that he was the only security officer prevented from wearing a uniform. This evidence would not permit a reasonable jury to find that DISD's proffered reasons for reassigning and terminating him are pretextual.

Bennett also challenges the decision to reassign him to the position of dispatcher, contending that his supervisors were not consulted and that DISD offered no rationale that would justify transferring him. A reasonable jury could only find, however, that DISD's ADA Committee did proffer a reason for reassigning him to a dispatcher position: to

accommodate his physical restrictions that left him unable to perform the essential functions of the position of police officer. Bennett does not explain why the failure to consult his supervisors demonstrates pretext, and he fails to adduce any further evidence that the Committee's asserted basis was not true. Although the Committee's explanation does not address why Bennett was not qualified to remain as a security officer, Bennett must point to more than this absence of an explanation to create a genuine issue of fact regarding pretext.[10]

In sum, not only has Bennett failed to point to evidence that would permit a reasonable jury to find that DISD's proffered reasons for its adverse employment actions were pretextual, he has also failed to introduce evidence that would permit a reasonable jury to find the ultimate fact of discrimination based on physical or mental disability.[11]

_____

[10]According to DISD, Bennett was reassigned from security officer to dispatcher because his physical restrictions, which were initially expected to last six months, had been extended for an additional twelve months by the April 6, 2010 physician's report. There is evidence that the ADA Committee considered this report containing the twelve-month restriction.

[11]Bennett maintains that he can show a genuine fact issue as to discrimination via the mixed-motives alternative for overcoming DISD's proffered legitimate, nondiscriminatory reasons. He relies on the same arguments and evidence as his pretext argument. Assuming the mixed-motives argument is viable for an ADA discrimination claim, Bennett has failed to point to evidence that would enable a reasonable jury to find that his disability was a motivating factor in any of DISD's allegedly adverse employment actions. To be a motivating factor, discrimination "must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton*, 529 F.3d at 519 (citation omitted). "Under a mixed-motive framework [the defendant-employer] can defend against liability by showing that it would have taken the same action in the absence of any alleged discriminatory animus." *Crouch v. J C Penney Corp.*, 337 Fed. Appx. 399, 402 (5th Cir. 2009) (per curiam); *see also Leach v. Mansfield*, 2010 WL 707382, at *5 (S.D. Tex. Feb. 24, 2010). Even assuming that a reasonable jury could find that the DISD's employees' statements about veterans and the refusal to let Bennett wear a uniform evince

Accordingly, the court grants DISD's motion for summary judgment dismissing Bennett's ADA discrimination claim.

## IV

The court considers next whether Bennett has properly raised a separate claim under the ADA for DISD's alleged failure to accommodate his physical and mental disabilities.

Bennett's complaint does not specifically mention a claim for failure to accommodate, but Bennett argues that he has sufficiently pleaded such a claim and that he has adduced sufficient evidence to warrant a trial. Although DISD's motion for summary judgment does not specifically mention a failure to accommodate claim—presumably because it did not understand that Bennett was asserting such a claim—it moves for summary judgment on "all of [Bennett's] claims under the ADA." D. Br. 46.

"A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Ellis v. Crawford*, 2007 WL 1624773, at *11 (N.D. Tex. June 6, 2007) (Fitzwater, J.). "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)). "Accordingly, district courts do

---

bias, Bennett has failed to adduce sufficient evidence from which a reasonable jury could find that DISD would not have taken the same action based solely on his inability to perform the essential physical functions of the police officer position, and his insubordination and job abandonment.

not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *Id.*

Not only does Bennett's complaint fail to specify that it alleging a claim of failure to accommodate, it lacks any mention of the term "accommodate" or allegations necessary to make a prima facie claim for discrimination based on an employer's failure to accommodate a disability.  A prima facie case requires that a plaintiff show: "(1) the employer is covered by the statute; (2) [he] is an individual with a disability; (3) [he] can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Mzyk v. Ne. Indep. Sch. Dist.*, 397 Fed. Appx. 13, 15 n.3 (5th Cir. 2010) (per curiam).  Bennett's complaint does not allege that he had a disability or that he notified DISD of the disability.  In contrast, he alleges that adverse employment actions were taken against him "on the ground of *perceived* disability." Compl. ¶ 10 (emphasis added); *see also id.* at ¶ 13 (alleging that DISD "discriminated against him on the ground that it so perceived him to be disabled").  He likewise does not allege that DISD failed to accommodate him.  Because the complaint fails to adequately raise, or even to intimate, that Bennett is asserting a claim for failure to accommodate, he cannot avoid summary judgment based on such a claim.  *See Cutrera*, 429 F.3d at 113.

## V

The court next considers Bennett's ADA retaliation claim.

## A

To prevail on his retaliation claim, Bennett must first establish a prima facie case by

- 18 -

showing that (1) he engaged in an activity protected by the ADA, (2) an adverse employment action occurred, and (3) a causal link existed between the protected act and the adverse employment action. *Seaman*, 179 F.3d at 301. Once Bennett establishes a prima facie case, DISD must adduce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If DISD produces evidence of such a reason, Bennett must introduce sufficient evidence to enable a reasonable jury to find that the proffered reason is pretextual. *Id.* Ultimately, he must prove that "but for" the protected activity, DISD's adverse employment action would not have occurred. *Id.*[12]

DISD moves for summary judgment on this claim on the basis that Bennett did not engage in any protected activity before June 9, 2010, when he filed his charge of discrimination; that it had legitimate, nondiscriminatory reasons for reassigning him to the positions of security officer and dispatcher and for terminating his employment; and that he lacks competent summary judgment evidence establishing pretext. In response, Bennett argues that his continuing requests for accommodations between May 2009 and June 2010 were protected conduct under the ADA. He posits that, in addition to being reassigned and terminated, he was also subjected to harassment in the form of discouraging statements and actions by DISD and the demand that he relinquish his police commission and thereby give

---

[12]As with ADA discrimination claims, it is unclear in the Fifth Circuit whether the mixed-motive alternative is available in ADA retaliation claims because the statute employs the term "because" instead of "motivating factor." *See* 42 U.S.C. § 12203(a); *Johnson v. Benton Cnty. Sch. Dist.*, ___ F.Supp.2d ___, 2013 WL 765614, at *5-6 (N.D. Miss. Feb. 25, 2013). Because the question is unsettled, the court will consider Bennett's mixed-motive arguments.

up a police career with DISD.  He asserts that the proof of pretext or motivating factor that he raised in his discrimination claim is sufficient to warrant a trial of his retaliation claim as to his adverse placements and termination.

B

The court first addresses retaliation related to Bennett's alleged requests for accommodation.  While requesting a reasonable accommodation "may constitutes engaging in a protected activity" under the ADA, *see, e.g., Tabatchnik v. Continental Airlines*, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (per curiam) (citation omitted), Bennett has not presented evidence that would enable a reasonable jury to find that he requested that his physical or mental disabilities be accommodated.  And Bennett does not dispute that, until he was released from physical restrictions by his physician on April 28, 2010, he was not physically qualified to perform the essential functions of a police officer, and thus could not be accommodated in this position.  Although he maintains there were other non-patrol positions related to the Criminal Investigation Division ("CID") or property room available within the DISD Police Department, he has produced no evidence that he requested to be assigned to these positions or that he was qualified for them.  In addition, there is no evidence that Bennett requested to be accommodated on the basis of his alleged mental disability of PTSD.  Indeed, Bennett admitted that DISD did not even know that he had been diagnosed with PTSD until after he filed this suit.

Even assuming that Bennett could establish that he requested a reasonable accommodation, he has produced no evidence that would enable a reasonable jury to find a

causal link between his alleged requests for accommodation and DISD's decisions to reassign him to the positions of security officer and dispatcher, or to terminate his employment.   As explained above, *see supra* § III(B), DISD has proffered legitimate, nondiscriminatory reasons for its decisions to reassign Bennett (his physical limitations) and to terminate him (insubordination and job abandonment).   Bennett has failed to introduce evidence that would enable a reasonable jury to find that his requests for accommodation were a "but for" cause or motivating factor of DISD's adverse employment actions.

Bennett also bases his retaliation claim on "all of the harassing conduct of [DISD] . . . [and] the demand that he relinquish his police commission and thereby give up a police career with [DISD]."  P. Br. 33.  Assuming *arguendo* that the harassment and demand to relinquish his police commission are actionable under the ADA retaliation and coercion provisions, *see* 42 U.S.C. § 12203(a)-(b), Bennett has not adduced evidence that would enable a reasonable jury to find a causal link between these actions and his alleged requests for accommodation.  Regarding the alleged harassment, none of the various statements made to Bennett about his ability to return to a police officer position and ultimatums that he take the dispatcher position mentions or relates to any request for accommodation.[13]  As for the police commission, a reasonable jury could only find that DISD intended to remove it when Bennett transferred to the dispatcher position because a commission allows a police officer

_____

[13]Bennett does not specify any instances of harassment or particular statements that show retaliation.  Nor does he explain how the harassment relates to requests for accommodation.

to carry a gun, which imposes continuing liability on DISD for the officer's actions.  Bennett has failed to adduce any evidence that would enable a reasonable jury to find that DISD's true or motivating reason for demanding that he relinquish his commission was his alleged requests for accommodation.

Regarding Bennett's protected activity of filing a charge of discrimination, which occurred on June 9, 2010, he has failed to adduce sufficient evidence for a reasonable jury to find that this was a "but for" cause or motivating factor in DISD's decision to terminate his employment.  DISD has proffered legitimate, nondiscriminatory reasons for terminating Bennett that are entirely unrelated to his filing.  Bennett has not introduced sufficient evidence for a reasonable jury to find in his favor.

Accordingly, the court grants summary judgment dismissing Bennett's ADA retaliation claim.

## VI

The court next considers Bennett's ADA harassment claim.

## A

To succeed on a claim for disability-based workplace harassment under the ADA, a plaintiff must demonstrate

> (1) that [he] belongs to a protected group; (2) that [he] was subjected to unwelcome harassment; (3) that the harassment complained of was based on h[is] disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

- 22 -

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235-36 (5th Cir. 2001). The legal standard for workplace harassment is "high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "For workplace abuse to rise to the level of an actionable offense the 'disability-based harassment must be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Flowers*, 247 F.3d at 236). In determining whether the environment in which Bennett worked was hostile, the court considers the totality of the circumstances, including such factors as the frequency of the conduct, the severity of the conduct, the degree to which the conduct was physically threatening or humiliating, and the degree to which the conduct unreasonably interfered with the employee's work performance. *E.g., Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996). "The environment must be deemed 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

DISD argues that Bennett's ADA harassment claim must fail because none of the examples of harassment that Bennett cites is so severe or pervasive that it altered the conditions of his employment with DISD. Bennett responds that he was harassed based on his perceived psychiatric disability when DISD employees "expressed to him a negative stereotype of him as a disabled veteran, discouraged him from trying to again become a police officer, and threatened to derail any effort to do so," and when DISD "subjected him

- 23 -

to the indignity of not being able to wear a uniform despite the right of every other police or security officer to do so."  P. Br. 30-31.[14]

B

The court concludes that Bennett has failed to introduce sufficient evidence for a reasonable jury to find that the alleged harassment was so severe that it affected a term, condition, or privilege of employment.  Although not wearing a uniform may be subjectively offensive to Bennett because all other security and police officers wore uniforms, a reasonable jury could not find that it made the work environment objectively hostile or abusive.  *See, e.g., Gowesky*, 321 F.3d at 510 (finding no actionable disability-based harassment for reasonable conditions imposed on physician with Hepatitis C).

The evidence about veterans' psychological fitness and the alleged threat that he would not pass the psychological evaluation would not enable a reasonable jury to find that the work environment was hostile.  *Compare McConathy v. Dr. Pepper/Seven-Up Corp.*, 131 F.3d 558, 560, 564 (5th Cir. 1998) (per curiam) (finding no actionable disability-based harassment in employer's "insensitive and rude" comments to employee "that she 'better get well this time,' and that he would 'no longer tolerate her health problems'") *and Gowesky*, 321 F.3d at 511 (finding no harassment of physician-employee with Hepatitis C in employer's "express[ing] his unwillingness to be treated by a dentist infected with hepatitis

---

[14]Bennett also maintains that this harassment affected a term of his employment because it was used to justify the denial of accommodations, but he offers no further explanation or evidence to support this assertion.

- 24 -

C or to allow [employee] to suture his child") *with Flowers*, 247 F.3d at 237 (upholding verdict of harassment on HIV-positive employee where, upon learning of diagnosis, supervisor who had been friendly immediately became distant, began issuing disciplinary write-ups, put employee on two probation periods, lured her into meetings with others where she felt ambushed, and called her a "b--ch").

Accordingly, the court grants summary judgment dismissing Bennett's ADA hostile work environment claim.

## VII

Bennett also brings a reemployment claim under USERRA, 38 U.S.C. §§ 4312 and 4313. The court turns to whether DISD is entitled to summary judgment dismissing this claim.

## A

USERRA provides reemployment rights to "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services." *Id.* § 4312(a). Section 4313 requires that such employees be promptly reemployed, and it prescribes the order of priority for the position a person receives upon reemployment.

The parties dispute whether § 4313(a)(3) or § 4313(a)(4) applies here. Subsection (a)(3) applies "[i]n the case of a person who has a disability incurred in, or aggravated during, [uniformed] service." Subsection (a)(4) addresses employees who are not qualified for a position "for any reason (other than disability incurred in, or aggravated during, service

in the uniformed services)."[15]  The court need not decide which subsection controls because

DISD is entitled to summary judgment under either one.

Subsections 4313(a)(3) and (a)(4) impose similar obligations on an employer.[16]  An

_____

[15]DISD maintains that § 4313(a)(4) rather than § 4313(a)(3) applies to Bennett
because at the time of reemployment he did not disclose that he had a disability.  Bennett
admitted in his deposition that he did not tell anyone from DISD that he had PTSD.  But
Bennett did inform DISD of his physical impairments in May 2009, before returning to work
in June, and it is undisputed that he was injured during his deployment to Iraq.

[16]Subsection 4313(a)(3) provides:

> In the case of a person who has a disability incurred in, or
> aggravated during, [uniformed] service, and who (after
> reasonable efforts by the employer to accommodate the
> disability) is not qualified due to such disability to be employed
> in the position of employment in which the person would have
> been employed if the continuous employment of such person
> with the employer had not been interrupted by such service[, he
> shall be employed]—
> (A) in any other position which is equivalent in seniority, status,
> and pay, the duties of which the person is qualified to perform
> or would become qualified to perform with reasonable efforts by
> the employer; or
> (B) if not employed under subparagraph (A), in a position which
> is the nearest approximation to a position referred to in
> subparagraph (A) in terms of seniority, status, and pay
> consistent with circumstances of such person's case.

Subsection 4313(a)(4) provides:

> In the case of a person who (A) is not qualified to be employed
> in (i) the position of employment in which the person would
> have been employed if the continuous employment of such
> person with the employer had not been interrupted by such
> service, or (ii) in the position of employment in which such
> person was employed on the date of the commencement of the
> service in the uniformed services for any reason (other than

employer must exert reasonable efforts to qualify a returning employee for the position to which he is entitled under the statute. *See id.* § 4313(a)(3); *id.* § 4313(a)(4)(B). The subsections prescribe a similar priority of positions into which an employee is entitled to be placed.[17]  Both essentially require that the employee be placed in the position he would have held had his military service not interrupted his continuous employment (called the "escalator position"), or a position that is "equivalent in seniority, status, and pay" or the nearest approximation to that equivalent position.[18]

These reemployment position priorities depend on the employee's being qualified for the position. Each subsection allows an employer to place the employee in the nearest approximation to a prescribed position as the employee's qualifications allow. *See id.*

--------

disability incurred in, or aggravated during, service in the uniformed services), and (B) cannot become qualified with reasonable efforts by the employer, [he shall be employed] in any other position which is the nearest approximation to a position referred to first in clause (A)(i) and then in clause (A)(ii) which such person is qualified to perform, with full seniority.

[17]For defining the priority of reemployment positions, subsections (a)(3) and (a)(4) work from the starting point of §§ 4313(a)(1) and (a)(2). Subsection (a)(2), the relevant one here, provides that an employee absent more than 90 days for uniformed service shall be rehired into the escalator position, or if not qualified for that position after the employer's reasonable efforts, the position he held before his absence, or an equivalent position.

[18]Subsection (a)(4) requires slightly less because, if the employee is not qualified for the escalator position, it allows the employer to place the employee in the nearest approximation to the escalator position or the position he held before his absence. Subsection (a)(3) requires, even if the employee is not qualified for the escalator position or its equivalent, the nearest approximation to a position equivalent to the escalator position. *See id.* § 4313(a)(3)(B)

§ 4313(a)(3)(A)-(B); *id.* § 4313(a)(4)(B).  "[T]he burden of proving that a returning veteran is not qualified under § 4313 falls on the employer, not on the employee."  *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 444 (6th Cir. 2008) (citation omitted); *see also Ouimette v. Cnty. of L.A.*, 2012 WL 6214305, at *6 (C.D. Cal. Dec. 12, 2012).  "'Qualified' means that the employee has the ability to perform the essential tasks of the position."  20 C.F.R. § 1002.198(a)(1) (2013).  In determining what is an essential task, considerations include "[t]he employer's judgment as to which functions are essential" and "[w]ritten job descriptions developed before the hiring process begins."  *Id.* § 1002.198(a)(2)(i)-(ii).

The reemployment requirements of §§ 4312 and 4313 apply only to the initial rehiring, not subsequent reassignments.  *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006) (explaining that § 4312 applies only to the act of rehiring, whereas other sections, such as § 4311, protect military members from discrimination after rehiring).  Therefore, Bennett's reemployment claim is limited to DISD's placement of him in the security officer position.

B

Bennett maintains that DISD violated USERRA's reemployment provisions because it failed to exert reasonable efforts to make him qualified for a police officer position.  He also contends that the security officer position was not equivalent in "status" to a police officer position.  For example, security officers wore different uniforms than police officers, and there is evidence that police officer positions were considered "higher status" than other

positions in the department, like dispatcher.  *See* P. App. 178.

DISD responds that Bennett's reemployment claim fails because he was not qualified to be a police officer, and the security officer position was the nearest approximation to a police officer position.  DISD asserts that Bennett's May 2009 EFF showed that he had physical restrictions that left him unable to perform the essential functions of a police officer. According to DISD's position descriptions, a school police officer is "[r]egularly required to bend, crouch, stoop, kneel, and/or crawl; climb; and balance."  D. App. 14; *see also id.* at 17 (describing similar requirements for campus officer).  Bennett asserts that there were other non-patrol police officer positions for which he was qualified despite his physical limitations.[19]  He refers to police officer positions in the CID and property room.  But DISD's position description for a "crime scene/property room officer" also requires regular bending, crouching, stooping, kneeling, crawling, climbing, and balancing.  *Id.* at 11-12.  And although DISD does not point to a position description for a CID position, it states that Bennett could not perform the physical functions required of all police officers.  Bennett cites evidence that officers with restrictions could be assigned to the CID, but he does not offer any proof challenging the assertion that he could not perform the physical requirements of a CID position.  Relatedly, DISD asserts that no reasonable efforts were available to qualify Bennett for the police officer position because his physical restrictions rendered him unable

---

[19]Bennett also cites testimony from DISD's expert and his supervisor, Brenda Oliver, related to his psychological fitness.  This evidence would not enable a reasonable jury to find that he was physically qualified for a police officer position.

to perform any police officer position.  DISD explains that it considered the non-patrol positions and determined that Bennett was not qualified.  It thus assigned him to the nearest approximation—a security officer position.

DISD has established beyond peradventure that Bennett was not qualified for any police officer position.  And because the disqualification arises from physical restrictions that go to the essential functions of the police officer position, Bennett has not shown a genuine issue of fact that DISD failed to exert reasonable efforts to qualify him as a police officer. Bennett does not propose any reasonable efforts that DISD could have undertaken to qualify him to perform physical tasks that his restrictions prevented him from doing.  *See Brown v. Con-Way Freight, Inc.*, 891 F.Supp.2d 912, 2012 WL 1718989, at*6 (N.D. Ill. May 15, 2012) (granting summary judgment for employer under § 4313(a)(3) and rejecting argument that employer failed to reasonably accommodate employee who could not perform the physical requirements of former position).  Therefore, although Bennett has raised a fact issue regarding whether the security officer position carried equivalent status as a police officer position, no reasonable jury could find that Bennett was qualified for a police officer position after accounting for his physical restrictions at the time he was rehired.  Because Bennett does not point to any other positions more nearly approximated to a police officer position than the security officer position, DISD is entitled to summary judgment on this claim.

- 30 -

VIII

Bennett also asserts a claim for discrimination under USERRA.

A

USERRA prohibits denying benefits of employment on the basis of membership or performance in a uniformed service, or if such membership or performance is a motivating factor for the denial. *See* 38 U.S.C. § 4311(a), (c). The employee bears the initial burden of showing that his military service was a motivating factor in the adverse employment action. *Snowman v. IMCO Recycling, Inc.*, 347 F.Supp.2d 338, 342 (N.D. Tex. 2004) (Lindsay, J.) (citing *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)); *see also Gummo v. Vill. of Depew, N.Y.*, 75 F.3d 98, 106 (2d Cir. 1996). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Snowman*, 347 F.Supp.2d at 342 (quoting *Sheehan*, 240 F.3d at 1013); *see also* 38 U.S.C. § 4311(c).

DISD argues it is entitled to summary judgment because Bennett has failed to establish that his membership in the uniformed services was a motivating factor for any of the actions taken by DISD. Specifically, DISD maintains, as it did in opposing Bennett's ADA claim, that it reassigned him because he was not physically qualified to perform the essential functions of his police officer job, and, once he was cleared with respect to his physical restrictions, he refused to submit to a complete psychological evaluation, which DISD required as a result of his self-disclosed injury by an RPG attack. To the extent

- 31 -

Bennett bases his USERRA discrimination claim on the termination of his employment, DISD argues that it terminated him because he refused to submit to psychological testing and because of job abandonment, "all reasons clearly unrelated to his military service." D. Br. 39.

B

Bennett relies primarily on the same evidence and arguments here as with his ADA discrimination claim: that DISD employees made biased statements about veterans' psychological fitness; that they held resentment against him for seeking to return to a police officer position; and that he was treated differently from other police officers and security officers. He maintains that this evidence demonstrates that his military service was a motivating factor in the adverse employment actions against him.

Despite the evidence of statements related to Bennett's military service—such as Avera's statement to Bennett that "you've been gone a long time to both Iraq and Afghanistan and I'm not going to take any chances," P. App. 13—Bennett has failed to introduce evidence that would enable a reasonable jury to find that his military service was a motivating factor in DISD's decisions regarding his reassignments, his termination, and the demand that he relinquish his police commission on being transferred to dispatcher. Although Bennett was injured and developed PTSD during his military service, Bennett points to no evidence that DISD's decisions regarding his employment related to his protected status as a member of the military. *See Sheehan*, 240 F.3d at 1014-15 (holding that "in USERRA [discrimination] actions there must be an initial showing by the employee that

*military status* was at least a motivating or substantial factor").

IX

Bennett asserts a claim for USERRA retaliation. As evidentiary support, he relies on the statements made by DISD employees and DISD's disparate treatment of him.

Under USERRA "[a]n employer may not discriminate in employment against or take any adverse employment action against any person" for, *inter alia*, taking action to enforce a right or protection under USERRA. 38 U.S.C. § 4311(b). Retaliation can be proved through the mixed-motives alterative, i.e., by demonstrating that an employee's protected actions were a motivating factor for the employer's discrimination. *See id.* § 4311(c)(2). The employer can defend itself by proving that the action would have been taken in the absence of employee's protected actions. *Id.*

While it is likely that Bennett's demand for reemployment as a police officer, his complaints of USERRA violations, and his filing a USERRA grievance would be protected activity under § 4311(b), he fails to introduce evidence that would enable a reasonable jury to find that such actions motivated DISD's adverse employment actions. Bennett fails to point to any evidence of a connection between his USERRA-protected actions and DISD's decisionmaking. He merely refers to the same general evidence that he endured biased statements, resentment, and disparate treatment. The only direct statement Bennett cites about USERRA is Howard's email to Ronquillo stating that Bennett "tried to slam us" with his USERRA grievance. P. App. 150. Bennett filed this grievance on May 10, 2010—after the ADA Committee had assigned him to the dispatcher position. And Bennett cites no

evidence that his grievance related to the decision to terminate him for job abandonment and for insubordination for refusing to undergo psychological evaluation.

X

Finally, Bennett asserts a claim for harassment under USERRA. The Fifth Circuit held in *Carder v. Continental Airlines, Inc.*, 636 F.3d 172, 179 (5th Cir. 2011), that Congress did not intend to create a hostile work environment cause of action under USERRA. It based its holding, in large part, on Congress' failure to include "terms, conditions, or privileges of employment" in its definition of "benefit of employment" in 38 U.S.C. § 4303(2). *Id.* at 177-79. Effective November 21, 2011, Congress amended the definition of "benefit of employment" to expressly include "the terms, conditions, or privileges of employment." 38 U.S.C. § 4303(2). DISD argues that because the amendment did not take place until November 2011, it cannot be applied retroactively to Bennett's case, which was filed February 28, 2011.

The court need not resolve whether a hostile work environment claim is legally available to Bennett. Even assuming that the statute applies retroactively and provides such a cause of action, Bennett has failed to introduce evidence that would enable a reasonable jury to find that he was subjected to harassment, in violation of USERRA. Bennett argues that "[t]he same considerations supporting Plaintiff's ADA harassment claim . . . support a[] harassment claim under USERRA." P. Br. 48. The court has already granted summary judgment on Bennett's ADA harassment claim, and it similarly holds that the isolated statements about veterans' psychological fitness and Bennett's ability to return to a police

officer position do not create a fact issue that the work environment was objectively hostile to Bennett because of his military membership.

The court therefore grants DISD's motion for summary judgment dismissing this claim.[20]

*   *   *

For the foregoing reasons, the court grants DISD's motion for summary judgment and enters judgment dismissing this action today.[21]

**SO ORDERED.**

March 29, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[20]DISD moves to strike parts of Bennett's summary judgment evidence. Specifically, it asks the court to review all of Bennett's "factual" assertions to confirm the evidence actually supports his assertions. It requests that all statements made by Bennett that are not supported by the evidence be stricken from the record. DISD also moves to strike the statements and evidence relating to the findings of the Texas Workforce Commission ("TWC") in connection with Bennett's unemployment claim. In deciding DISD's motion, the court has reviewed the evidence on its own and has noted, where appropriate, the instances in which Bennett has mischaracterized the record. Given today's decision, the court need not strike any specific evidence from the record. With respect to the TWC findings, the court has not considered these records in deciding DISD's motion. Accordingly, DISD's motion to strike is denied.

[21]The court denies DISD's September 14, 2012 motion to strike and denies Bennett's August 21, 2012 motion to strike.